Randy Nussbaum, Esq. (SBN 006417)
Randy.Nussbaum@SacksTierney.com
Wesley D. Ray, Esq. (SBN 026351)
Wesley.Ray@SacksTierney.com
**SACKS TIERNEY P.A.**
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone:  480.425.2600
Facsimile:  480.970.4610
*Proposed Attorneys for Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| ARIZONA FUNDRAISING SOLUTIONS, INC., | Case No. 2:17-bk-10016-PS |
| Debtor. | **DECLARATION OF CHRISTOPHER J. STEWART IN SUPPORT OF FIRST DAY MOTIONS** |

I, Christopher J. Stewart, under penalty of perjury, declare as follows:

1.     I am an adult resident of Maricopa County, Arizona.

2.     I am of sound mind and make this declaration of my own free will.

3.     Except as otherwise indicated herein, the following statements are based upon my personal knowledge.

4.     I am the President, sole director, and sole shareholder of Arizona Fundraising Solutions, Inc. (the "Debtor").

5.     I am familiar with the Debtors' operations and financial affairs.

6.     I have reviewed, and make this declaration in support of, the following motions (collectively, the "First-Day Motions") filed by the Debtor:

    a.     The *Motion to Authorize the Interim Use of Cash Claimed as Collateral and to Determine that Certain Post Petition Revenues are Not Cash Collateral* ("Cash Collateral Motion"); and

b.      The *Motion to Authorize Payment of Pre-Petition Wages, Commissions, Benefit Contributions, and Reimbursements* ("Wage Motion").

## GENERAL INFORMATION

7.      On August 25, 2017 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

8.      The Debtor owns a fundraising franchise, which is operated under the auspices of that certain Franchise Agreement, dated as of February 26, 2015 (the "Franchise Agreement"), between the Debtor and Apex Fun Run LLC ("Apex").

9.      The Debtor is engaged, generally, in organizing and managing fund-raising events for elementary schools.

10.     Prior to the Petition Date, the Debtor fell into default of the Franchise Agreement and was at risk of a cessation of operations.

11.     Since that time, however, the Debtor has had extensive and fruitful negotiations with Apex and believes that, through these bankruptcy proceedings, a plan of reorganization or liquidation can be proposed that will maximize the value of the Debtor's estate for the benefit of all parties-in-interest.

## CASH COLLATERAL

12.     In order to continue operations and preserve the value of its estate during these bankruptcy proceedings, it is necessary for the Debtor to use its cash-on-hand and the income derived from post-petition operations to pay the Debtor's ordinary and necessary expenses.

13.     The Debtor's projected income (the "Income") and expenses (the "Expenses") for the upcoming months are identified in the budget attached to the Cash Collateral Motion as Exhibit "A" (the "Budget").

14.     I believe that the revenues projected in the Budget are reasonable, and the expenses identified in the Budget are reasonable and necessary.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2

15.     Upon information and belief, based upon pre-petition agreements and assertions, I suspect that Wells Fargo Bank, National Association and Apex (collectively, the "Creditors") assert a security interest in, among other things, the Debtor's cash, inventory, and accounts receivables.

16.     It is my understanding that Apex has consented to the relief sought in the Cash Collateral Motion.

17.     The Debtor has not had sufficient time to determine the validity, priority, enforceability, or extent of any lien asserted by the Creditors, or any other party.

18.     It is crucial for the Debtor to have the use of the Income to operate and maintain its business in order to preserve its going-concern value while the Debtor proposes and implements a plan of reorganization or liquidation.

19.     I believe that the Debtor's business operations would suffer immediate and irreparable harm if the Debtor was not allowed to use the Income to pay the Expenses.

20.     Based upon the Budget, I believe that, so long as the Debtor is permitted to use the Income to pay the Expenses, any interests the Creditors may hold in the Debtor's cash-on-hand, equipment, or receivables will be adequately protected through the Debtors' ongoing operations and the provision, if necessary, of a replacement lien, as described in the Cash Collateral Motion.

**EMPLOYEE COMPENSATION**

21.     The Debtor has approximately 20 employees (without making any admission as to legal characterization, employees and contractors shall hereinafter be referred to, without distinction, as the "Employees").

22.     The Debtors' payroll system is based upon bi-weekly pay periods, which end on the first and fifteenth of each month.

23.     Payments to the Employees are generally made on the last day of each pay period, such that, upon receipt of each paycheck, each Employee is paid all wages and benefits accrued as of that date.

24.     As such, in the ordinary course of its business, the Debtor's next payroll will occur on August 31, 2017.

3

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

25.     Certain of the Employees are paid an annual salary, certain of the Employees are paid on an hourly basis, and certain of the Employees are paid commissions for services rendered and sales consummated.

26.     Certain of the Employees receive their compensation by way of direct deposit, while others receive paper checks.

27.     All payroll funds are disbursed to the Employees directly from a single payroll account.

28.     As part of their compensation, certain of the Debtor's Employees receive access to health, dental, vision, and/or long-term disability insurance at discounted rates.

29.     The Debtor pays a portion of the premiums associated with these policies, and deducts the remainder from the respective Employee's pay.

30.     In addition to wages and benefits, the Debtor provides reimbursement of business-related expenses to its principal and certain of the Employees.

31.     As part of their compensation, and in accordance with Arizona law and the Debtor's established policies, the Employees also accrue paid sick time off ("PTO").

32.     PTO is only honored on an ongoing basis, and, unless otherwise required by law, is not redeemable for cash.

33.     As of the Petition Date, there existed approximately $14,457 in earned but unpaid wages and commissions owing to the Employees

34.     Although the precise amounts are not currently available, there may also be a nominal amount of pre-petition paychecks from prior payrolls that have been delivered, but not yet cashed.

35.     As of the Petition Date, one reimbursement request, in the amount of $43.41, had been received, and upon review, approved by the Debtor.

36.     As of the Petition Date, approximately $204 in benefit contributions were owed, in aggregate, on account of the Employees pre-petition services.

37.     As of the Petition Date, the Employees, collectively, had accrued 15 hours of PTO.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

38.     A list of the Employees, showing the amount of payment to which each is estimated to be entitled in connection with his or her pre-petition employment, is attached to the Wage Motion as Exhibit "A."

39.     The greatest combined amount of earned pre-petition wages, commissions, benefit contributions and reimbursements due to any individual is approximately $1,365.98.

40.     I believe that if the Employees are not promptly and fully paid for their pre-petition employment, a meaningful number of Employees will terminate their employment with the Debtor, and that any such termination would material harm the Debtor's operations.

## **CONCLUSION**

41.     I believe that the Court's granting of the First Day Motions would facilitate the Debtor's ongoing operations and promote their ability to present and prosecute a plan of reorganization or liquidation.


By:  /s/ Christopher Stewart
      Christopher J. Stewart

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") on August 25, 2017, to:

U.S. Trustee *
USTPRegion14.PX.ECF@usdoj.gov
Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003



By:     /s/ Cathie Misquez